## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jenny Larkin, having been duly sworn, hereby depose and state:

## AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since 2019. As such, I am a "federal law enforcement officer" of the United States. I am currently assigned to the Boston Division, Violent Crimes Against Children/Human Trafficking Unit and am designated to work a variety of criminal matters, including child sexual exploitation, Internet crimes against children, and human trafficking. As part of my duties, I investigate violations of federal law, including the online exploitation of children, particularly in relation to violations of Title 18, United States Code Sections 2251, 2252, and 2252A which criminalize, among other things, the production, advertisement, possession, receipt, accessing with intent to view, and transportation of child pornography. I have received training in the area of child pornography and child exploitation and have experience reviewing and observing numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in different forms of media including computer media.

2.      Also as part of my duties, I investigate violations of Title 18, United States Code Sections 18 U.S.C. 1591 and 1594, which criminalize, among other things, the recruitment, enticement and solicitation or attempted recruitment, enticement, and solicitation of minors to engage in commercial sex acts. I am aware that the term "commercial sex acts" also encompasses visual depictions of sex acts or masturbation. I serve on the FBI Child Exploitation and Human Trafficking Task Force, which is comprised of local, state, and federal law enforcement officials, many of whom have investigated hundreds of human trafficking cases. I am familiar with the methods used by traffickers to recruit individuals, including minors, to engage in commercial sex.

3.      I submit this affidavit pursuant to Federal Rule of Criminal Procedure 41, in support of an application for a search warrant authorizing the search of a black iPhone in a clear case, located on and seized off the person of QICHEN YUAN ("YUAN") on August 19, 2025, as more fully described in Attachment A of this affidavit (the "TARGET DEVICE").

4.      Based on the information set forth in this affidavit, there is probable cause to believe that the TARGET DEVICE contains evidence of, or property intended for use in committing, violations of Title 18, United States Code, Sections 1591(a)(1) and (b)(2), and 1594(a) (attempted sex trafficking of a minor); Title 18, United States Code, Section 2252A(a)(2)(A) and (b)(1) (receipt of child pornography); Title 18, United States Code, Section 2252A(a)(5)(b) and (b)(2) (possession of child pornography) (collectively, the "SUBJECT OFFENSES"). Moreover, I respectfully submit that there is probable cause to believe that a search of the TARGET DEVICE, further identified in Attachment A, for the items and information more particularly described in Attachment B, will yield evidence of the aforementioned violations.

5.      This affidavit is based on my personal investigation and investigation by others, including federal and local law enforcement officials whom I know to be reliable and trustworthy. The facts contained herein have been obtained by interviewing witnesses and examining documents obtained in the course of the investigation as well as through other means. This affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause. All dates and times are approximate.

## FACTUAL BACKGROUND

6.     Beginning on or about August 16, 2025, law enforcement posted an advertisement (the "Advertisement") on a website commonly used to advertise prostitution services that contained images of what appeared to depict a young female and the following language:

> Hiiiiiihiiiii my name is Sophie every1 calls me Fifi
> (emojis) iii love 2 hav fun n vibe w the rite
> Person (emoji)  clean yunggg tight n InDePeNdEnT.
> Incall only (emoji)
>
> Imm a beautiful flower ready to bloom, a cherry ready
> to blossom. end out the summer with me even tho im
> always shining (emoji)
>
> tbhhh i hate scams n frauds so don't waste my
> Time! ULL be ignored N blocked !!!
>
> disss kitty is warm (emojis) come see yourself
> Text me or call me (Advertisement Number)

7.     The Advertisement did not indicate an age of the person who would perform commercial sex acts[1] and contained a contact phone number (the "Advertisement Number") that was monitored by law enforcement and operated by an undercover officer ("UC").

8.     On or about August 16, 2025, the Advertisement Number began receiving text messages from a phone number ending in 2606 (the "2606 Number"), now known to belong to QICHEN YUAN, in response to the Advertisement.  I previously submitted an affidavit in support of a criminal complaint (No. 25-MJ-1253-DLC) charging YUAN with Attempted Sex Trafficking of a Child in violation of 18 U.S.C. sections 1591(a)(1), (b)(2) and 1594(a). This Court signed that complaint on August 20, 2025. My prior affidavit in support of that complaint is attached as Exhibit 1 ("Ex. 1") and is incorporated herein by reference.  Exhibit 1 sets forth in considerable detail the

---

[1] The website utilized by law enforcement requires users to be at least 18 years old to utilize the website's services.

3

probable cause to believe that federal crimes have been committed. Ex. 1 ¶¶ 7-16.

9.    As set forth in Exhibit 1, YUAN communicated with the UC in a series of text messages in which he attempted to meet with a minor girl—age 15 years old—for various sex acts in exchange for money. As set forth in Exhibit 1, Yuan agreed to pay $250 for a "blow job" and sex with the 15-year-old girl.

10.    After investigators arrested YUAN, they located a cellular telephone on his person (the TARGET DEVICE). Investigators called the 2606 Number, and the TARGET DEVICE indicated that a phone call was coming in and displayed the name "FIFI" (the name used by the "minor" in the commercial sex advertisement to which YUAN was responding).

11.    YUAN initially invoked his right to counsel, but then voluntarily initiated a waiver of his Miranda rights, saying he wanted to make a statement. Law enforcement then conducted a recorded interview. During that interview, law enforcement asked YUAN if they could search his phone. YUAN declined to give consent for the search of the phone, but he did agree to provide his passcode to the officers, and he did that during the recorded interview. Law enforcement told YUAN that they would seek a warrant to search the phone.

12.    YUAN communicated with the UC via text message, and the TARGET DEVICE was the only device on the person of YUAN when he arrived at the location the UC gave him. In addition, the TARGET DEVICE indicated that a call was coming in when law enforcement called the 2606 Number and "FIFI" appeared on the screen of the TARGET DEVICE. Thus there is probable cause to believe that the TARGET DEVICE contains YUAN's conversations with the UC regarding his agreement to engage in commercial sex with a minor.

## CHARACTERISTICS OF INDIVIDUALS WITH A
## SEXUAL INTEREST IN CHILDREN

13.     Based on my training and experience, I am aware that individuals who have a sexual interest in children often use cell phones to communicate with multiple minors or adult intermediaries for sexual purposes.

14.     Furthermore, I know, from my training and experience, individuals with a sexual interest in children tend to use their mobile devices to access websites advertising commercial sex, such as the website on which the Advertisement was posted.

15.     Additionally, I know, from my training and experience, that individuals with a sexual interest in children tend to view and maintain child pornography on their electronic devices. As a result, law enforcement is generally able to recover media files of child pornography from electronic devices, and may be able to recover evidence of such files even if the files have been deleted.

16.     These individuals may also have images of minors that do not rise to the level of child pornography, but which nonetheless provide insight and corroboration into their deviant sexual fantasies involving minors.  For instance, offenders have been known to take and maintain photographs and video recordings of fully clothed minors, not just in sexually provocative poses, but in public places and elsewhere (such as beaches, parks, and so forth), to collect, review, and fulfil their sexual fantasies.  This sort of material, although not overtly sexual, further demonstrates that the defendant has a sexual interest in minors.

17.     Obtaining information for six months prior to the arrest will help combat any defense that YUAN travelled to the location the UC provided to him, as part of some type of routine or schedule or that he did so in an attempt to rescue or otherwise assist the purported youth.

## INVESTIGATORS' POSSESSION OF THE TARGET DEVICE

5

20.     After taking possession of the TARGET DEVICE and after YUAN provided investigators with his passcode, investigators put in the passcode to put the TARGET DEVICE in airplane mode to preserve evidence. The TARGET DEVICE is currently being stored by investigators at FBI Headquarters in Chelsea, MA. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

21.     From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use mobile phones to carry out, communicate about, and store records regarding their daily activities.  These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of activities; arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

22.     Based on my training, experience, and information provided by other law enforcement officers, I know that many cell phones, including the TARGET DEVICE, which are included in each Attachment B's definition of hardware, can now function as small computers in many respects.  A cellular telephone is a handheld wireless device used for voice and text communication as well as for accessing the internet.  Telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which

records the telephone number, date, and time of calls and text messages made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. Based on my training, experience, and research, I know that many cellular telephones have capabilities described above. For example, they have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

23.     From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in mobile phones, computer hardware, computer software, and storage media.

24.     Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet.  This is true because:

a.     Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost.  Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

b.     Even after files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time.  In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.     Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files.  It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d.    Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."  The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

### *Return of Seized Equipment*

25.    If equipment cannot be returned, agents will make available to the equipment's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, personally-identifying information of victims; or the fruits or instrumentalities of crime.

26.    Law enforcement personnel are authorized to retain a digital copy of all computer equipment seized pursuant to this warrant until the completion of its investigation or the completion of any trial, appeal, or collateral proceeding involving the records and data seized, after which time law enforcement personnel will dispose of the account duplicate consistent with the agency's evidence disposal policy.

### <u>CONCLUSION</u>

27.    Based on the information provided above, I respectfully submit that there is probable cause to obtain a search warrant for the TARGET DEVICE, as more fully described in Attachment A, for evidence of violations of Title 18, United States Code, Sections 1591(a)(1) and (b)(2), and 1594(a) (attempted sex trafficking of a minor); Title 18, United States Code, Section 2252A(a)(2)(A) and (b)(1) (receipt of child pornography); Title 18, United States Code, Section 2252A(a)(5)(b) and (b)(2) (possession of child pornography). Because the TARGET DEVICE is already in law enforcement's possession and the execution of this warrant does not involve the

physical intrusion onto a premises, I submit there is reasonable cause for the Court to authorize

execution of the warrant at any time in the day or night.

_Jenny Larkin_
Jenny Larkin, Special Agent
Federal Bureau of Investigations

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone, on this 20 day of August, 2025,
at Boston, MA.



HONORABLE DONALD L. CABELL
UNITED STATES CHIEF MAGISTRATE JUDGE

10

**ATTACHMENT A**
**Equipment To Be Searched**

The equipment to be searched consists of a black iPhone in a clear case, seized from

QICHEN YUAN on August 19, 2025. A photo of the device appears below.



The equipment is located at FBI Headquarters in Chelsea, MA.

**ATTACHMENT B**
**Items to Be Seized**

I.      All records, in whatever form, and tangible objects that constitute evidence, fruits, or

instrumentalities of violations of Title 18, United States Code, Sections 1591(a)(1) and (b)(2), and

1594(a) (attempted sex trafficking of a minor); Title 18, United States Code, Section

2252A(a)(2)(A) and (b)(1) (receipt of child pornography); Title 18, United States Code, Section

2252A(a)(5)(b) and (b)(2) (possession of child pornography) (altogether "SUBJECT

OFFENSES") **for the period of February 20, 2025** including those related to:

A.      Any correspondence with Advertisement number

B.      Any web or browser history including but not limited to tryst.link, private delights,

onlyfans, megapersonals, onebakcpage, and adultsearch or any other site

advertising escorts, commercial sex, and/or prostitution

C.      Any photos, videos, social media sites, messaging app, text messages, call log,

facetime log, contact list, emails related to violations of the SUBJECT OFFENSES

D.      Any items related to following topics:

1.      Sex Trafficking;

2.      Commercial Sex, including prostitution and payment in exchange

for sexual photos or videos

3.      Travel in interstate commerce;

4.      Child sexual abuse material;

E.      The payment, receipt, transfer, or storage of money or other things of by YUAN

F.      The travel or whereabouts of YUAN on August 19, 2025

G.      For the equipment:

12

1.    evidence of who used, owned, or controlled the computer equipment;

2.    evidence of the presence or absence of malicious software that would allow others to control the items, and evidence of the presence or absence of security software designed to detect malicious software;

3.    evidence of the attachment of other computer hardware or storage media;

4.    evidence of counter-forensic programs and associated data that are designed to eliminate data;

5.    evidence of when the computer equipment was used;

6.    passwords, encryption keys, and other access devices that may be necessary to access the computer equipment;

7.    records and tangible objects pertaining to accounts held with companies providing Internet access or remote storage; and

II.    Serial numbers and any electronic identifiers that serve to identify the computer equipment.

**DEFINITIONS**

For the purpose of this warrant:

A.    "Computer equipment" means any computer hardware, computer software, mobile phone, storage media, and data.

B.    "Computer hardware" means any electronic device capable of data processing (such as a computer, smartphone, cell/mobile phone, or

wireless communication device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys).

C.    "Computer software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.

D.    "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, or memory card).

E.    "Data" means all information stored on storage media of any form in any storage format and for any purpose.

F.    "A record" is any communication, representation, information or data.  A "record" may be comprised of letters, numbers, pictures, sounds or symbols.